Before you start, the reason we require you to shout it out is so that you can wake everybody up. Good morning. May it please the court, counsel. My name is Nicholas Curran. I'm an attorney with Kathleen Zellner and Associates, and I represent the defendant appellant, Mr. Michael Wilson. Mr. Wilson was charged with first-degree murder and armed robbery. He was convicted following a jury trial and sentenced to a total of 59 years in the Illinois Department of Corrections. This is a direct appeal from that judgment of conviction. We have raised several issues in our brief, which I would respectfully submit require a reversal of Mr. Wilson's conviction, but there are three in particular that I would like to focus on here today. Those relate to the improper submission of an accountability instruction, the improper restriction of the defendant's cross-examination of a crucial prosecution witness, and the over the defendant. With regard to the first issue, over defense counsel's objection, the trial court submitted an accountability instruction to the jury. The submission of this instruction was an abuse of discretion that requires reversal. This court has held that an accountability instruction is improper if the evidence establishes that the defendant acted as a principal and not as an accessory. The rationale behind this proposition of law is that to submit an accountability instruction where there is not evidence to support it diminishes the prosecution's burden of proof. In this case, the prosecution's theory, the evidence, the testimony it elicited, if believed, implicated the defendant as the principal. The testimony was that the defendant directed the victim to a location where the victim could purchase crack cocaine. The testimony was that the defendant pulled out a weapon, demanded that the victim give him money, chased the victim out of an apartment vestibule, and shot him in the back. There was nothing unclear or equivocal about the evidence or the testimony. This court has stated that guilt predicated on an accountability theory is proper only if the other evidence is inconclusive as to the defendant's direct participation in the crime. Here, there was absolutely nothing inconclusive about the state's theory or its evidence. The state argued at trial, and they argue before this court, that there was slight evidence upon which the trial court could issue an accountability instruction. And for a number of reasons, that argument is incorrect and should be rejected by this court. The state points to a number of things that the defendant did prior to the commission of the shooting itself that would make him guilty as an accomplice. But what they miss is that there has to be some evidence to support a reasonable jury, or that would allow a reasonable jury to conclude that somebody else acted as principal. And that is completely missing in this case. There was no testimony that anyone other than the defendant fired the shot that struck and killed the victim. And that is the primary distinction between the cases that's gone. So it's beyond a reasonable doubt that the defendant killed the victim? If the state's evidence is accepted as true, and certainly the jury was free to either credit or reject the testimony that was elicited by the state, but what they could not do is, or what the trial court could not do, is submit an instruction on a theory of accountability that would provide a way, a back door, for the jury to find the defendant guilty in the event they didn't find the state's evidence credible. And there's no question that this prejudiced the defendant. In this case, the jury found the defendant guilty, obviously. However, they also found that the state did not prove beyond a reasonable doubt that the defendant had personally discharged a firearm causing the victim's death. Logic dictates, then, that at least a portion of the jury convicted the defendant based on a theory of accountability. This was improper, however, because there was no evidence that the defendant acted as anything other than the principal. And there is a case that I think is very important that this court decided. It's the Crowder case we cite in our reply brief, where you had two versions of events. The victim testified that the defendant in that case gave him crack cocaine to sell. When the victim was unable to pay the defendant back, the defendant directed him into a vehicle driven by another individual named Nolan. They drove to a location, secured a weapon, drove to an alley. The victim exited the vehicle, and the defendant shot him in the back. Nolan testified that he was the one who loaned or gave the drugs to the victim. He was the one who drove the defendant and the victim to a location, and he was the one who shot the victim in the back. This court held that in that case not only was it error, but it was plain error to issue an instruction on a theory of accountability explaining that the defendant was either guilty or he was not. There was no in-between. There was no gray area. And I think it's, well, I would respectfully submit that it's what the state would like for this court to do and what it asked the trial court to do by asking for an instruction on a theory of accountability to say, look, because the defendant's conviction was based almost entirely on the testimony of the co-defendant who was with him at the time. And what they would like this court to do is allow them to reach a plea agreement with this co-defendant, in a sense vouch for his testimony, because that's something they brought out on direct examination was the fact that his plea agreement was contingent on him giving truthful testimony whereby he describes a chain of events in which the defendant, all on his own, commits the shooting, but at the same time say, but look, jury, if you don't believe the evidence that we're setting forth, you can convict the defendant anyway on a theory of accountability, even though there's not any evidence in the record to support it. And for that reason, it was reversible error, I would submit, for the trial court to submit an accountability instruction. Well, to convict him of accountability, they'd have to believe that witness, wouldn't they? They would have to reject that witness's testimony. If they're going to convict him on a theory of accountability, that is a principle. They'd have to reject that witness saying it was him, but they'd have to believe that witness that they had a conspiracy together to rob this person, and he died. Well, and that's an excellent point, Your Honor, because, again, the state called the co-defendant, Byron Moore, to testify. He did not testify that there was a plan to rob this individual. It was a chance encounter with a victim at a gas station. The victim approached Mr. Moore and the defendant and asked them if they knew where he could purchase crack cocaine. They told him the location. He said, great, could you drive me and my friends to that location? They then drove to that location. They exited the vehicle, went up to the apartment, and that's where the robbery took place. Absent some form of telepathic communication, there's absolutely no evidence in the record that there was any plan for either of these individuals to do this. The record would bear that one of them just decided on the spur of the moment to rob this individual. And, again, Byron Moore, who reached an agreement with the state to testify against the defendant, did not testify that there was a plan to commit this crime. And you're saying there must be a plan. I'm not saying that there necessarily needs to be a plan, but there has to be some evidence upon which the jury could conclude without speculating that somebody other than the defendant acted as principal. In order to convict the defendant on a theory of accountability, in other words, as an accomplice, there has to be some evidentiary basis for the jury to reasonably conclude that somebody else acted as the shooter. And there simply was no evidentiary basis for the jury to make that determination in this case. On the first time the defense had any knowledge of accountability as an approach the prosecution is taking, was at the instructions conference. That's correct. And that's why the defense counsel objected to issuing that instruction. And if you look at the prosecutor's closing argument, it's all focused on the defendant acting as principal. I have a question. Certainly. How old was the minor at the time of the shooting? He was 14 years of age. So this was a discretionary transfer? It was. And that goes to the third issue I would like to discuss today. I don't quite want to jump there yet. When there was a hearing on the discretionary transfer, did the state disclose to the trial court that the theory was accountability? No. The theory all along was that the defendant had perpetrated the shooting, that he was the shooter. So if we were to speculate whether the trial court would have transferred if the theory had been accountability, we can't do that. We don't even know whether the trial court would have transferred it. So my question for you is, the cases that you rely on, I think, are adult criminal cases on accountability. When it involves a case that's transferred on the theory that the juvenile was the gunman, wouldn't the trial court be precluded from changing that theory at the time of trial unless some judge had transferred the case based on the theory of accountability? I think that's a fair point, and that, honestly, is not something I had thought of. I agree that part of the juvenile court's decision to transfer this case, because that is, of course, one of the things they're to take into consideration. Exactly. And obviously if you're dealing with a minor who is charged as solely an accomplice, as opposed to a principal, that plays into the decision to transfer the case to criminal court. There's a big difference between transferring a gunman and transferring a tag along that helped the gunman. That's correct. Turning to the second issue I would like to discuss, apart from Byron Moore, the most crucial witness to testify on behalf of the prosecution was a witness by the name of Travis Watson. Watson testified that shortly after the shooting he encountered Byron Moore and the defendant, made an admission to having shot the victim. On cross-examination, the defendant wanted to elicit testimony regarding Watson's fear of Moore, and that fear was based on Watson having heard that Moore, on a prior occasion, had robbed someone at gunpoint, and because Watson, who testified over the course of two days, after the first day of testimony he received multiple death threats, thought that somebody had followed him, and he attributed that conduct to Byron Moore's people. The trial court precluded the defendant from getting into this area of cross-examination, and if you review the record it's not immediately clear why. The only thing that the trial court says on the record is that she could not find any case law that would support letting one witness talk about their fear of another witness. But quite frankly, there was no legal reason why the defendant should not have been permitted to go into this very probative area of cross-examination. There's a wealth of case precedent that establishes that a witness's fear is relevant to their motive to testify. This evidence was not being offered to prove the truth of any of the matters asserted. It wasn't being offered as propensity evidence. It wasn't being offered for any reason other than to show Travis Watson's state of mind. And that was particularly relevant in this case, because Watson's testimony was essentially his statement that he gave to police around the time that Byron Moore was arrested. And defense counsel was able to elicit testimony that Watson was approached by Moore in the parking lot of a liquor store shortly before his arrest, and they spoke for 15 to 20 minutes. Thank you. So certainly, you know, this was extremely prejudicial because after this evidence was excluded, the prosecutor argued in closing argument, and I'm quoting here, let's talk about Travis Watson. What possible motive would Travis have to lie? What possible motive would Travis have to tell on a friend? The letter says, what possible motive would he have to lie on the defendant versus the guy he has known for two months? Well, the answer is because he was terrified of him. Byron Moore was the defendant's co-defendant. He was 17 years of age. He was known to carry around a sawed-off shotgun for protection. It's not at all unreasonable for the defendant to argue you should not believe what Watson is testifying as to what the defendant said because Moore told him to do it, to deflect blame from Moore. So this was testimony that should have been allowed, and it was reversible error to preclude the defense from going into that area of cross-examination. The last issue I will briefly touch on is the improper transfer of this case by the juvenile court. And it's really the process by which the juvenile court reached its decision to transfer the defendant that we take issue with. In the proceedings below, the juvenile court expressly abdicated its responsibility to take into account the best interests of the minor in determining whether or not to grant the state's motion to transfer. The justification for that was the court noted that when the statute was amended some 10 years or more before, language regarding the best interests of the minor had been removed. However, this court has held, the Supreme Court has held, and at least one other appellate district has held, all since the statute has been amended, that the fundamental purpose of a transfer hearing is to balance the interests of the minor against the interests of the state. So the lens through which the juvenile court viewed the evidence elicited at the transfer hearing was what is the best interest of the state? The best interests of the minor were disregarded expressly by the juvenile court on the record. And this court has held as recently as 2011 that the failure to consider a statutory or non-statutory factor requires reversal. If that's true, then certainly the failure to take or give due consideration to the fundamental purpose of a transfer hearing would also require reversal. But that's the principle, so what's the record show that that was not done? He expressly stated that he wasn't going to do it. And then if you read through his ruling where he grants the state's motion, everything is with an eye towards whether or not society would benefit, or it was in society's best interest for the defendant to be incarcerated beyond his 21st birthday. So it's a non-reasonable inference that he would have considered that other factor or set of factors? He considered, he recited all the statutory factors, but he did so through the lens of what is in the best interest of the public. And that's what he expressed and stated. He stated that what's in the best interest of the minor has been removed as a consideration in these circumstances. Now the court is to consider whether the security of the public requires sentencing as an adult. Does that mean that he didn't consider the best interest, or that he's considered it, now he moves on to the other factor? Well, I think that we have to take him at his word. Well, I'm taking him at his word. I'm asking, is that so clear and ambiguous that the inference I'm giving is wrong? And I'm sorry, the evidence... That he's looked at that factor, considered it, and now he's moving on to the other factor, the public interest factor. Well, I think what he's saying is because the best interest of the minor is not laid out explicitly as a factor in the statute. And so what he's saying when he's giving his ruling is, you know, we used to have to take into consideration... So it's decisional law that says you must consider it. Correct. It's not in the statute. Correct. Okay. Thank you. Does he acknowledge that at all in any way, shape, or form? No, he does not. And I can tell you that after the defendant was transferred, there was... During pretrial motions, there were statements made by the court that ended up presiding over Mr. Wilson's case to the effect that she was concerned that this case would be reversed for this very reason, but that she had no vehicle by which she could remand the case back to juvenile court to reconsider. You're talking about trial judge? That's correct. And the transferring judge was judge? Dick. Okay. Did you try to... No, no, no, no. Thank you. I have a question. Certainly. Sorry, I'm a pest. No, that's okay. If there's an accountability instruction error, I'm wondering... And that's an if. I'm wondering what the remedy is. Is the remedy remand? And assuming, for the sake of this question, transfer was proper. If there's an accountability instruction error, what is the remedy? Do we remand for a new trial in adult court? Or do we view it as an acquittal on the charge defense, which was the transfer defense? Murder as a direct actor, not by accountability. And, Your Honor, that gets to the second issue we raise in our brief. And essentially what we have argued is that because of the finding that the defendant or that the state had not proved beyond a reasonable doubt that the defendant had personally discharged a firearm causing the victim's death, that they, by necessity, found him guilty on a theory of accountability. And then we argue from that that the evidence was insufficient to prove him guilty under that theory. So I suppose it would depend on how the court rules on that issue in our brief. The evidence was insufficient to prove him guilty on a theory of accountability? Correct. Okay. So if the evidence was sufficient to prove him guilty on accountability? Well, then I think we would lose the threshold issue. If there was evidence sufficient to find him guilty under a theory of accountability, then our argument that the trial court erred in submitting an accountability instruction would necessarily be wrong. Our position is that the submission of that instruction was inappropriate because there was no evidence. Based on the evidence. Exactly, because there was no evidence that anyone else acted as principal. Okay. The state's case, the theory, the evidence, everything was. The trial court, that's one of the reasons I asked you that question, did the trial attorney err in closing and submitting the argument that Moore did it? Yes, that was the theory of. Evidence aside, he made that argument to the jury. Yes, and that, of course, is based on their attack of Moore's credibility. But the state did not offer any evidence. There was no direct evidence or circumstantial evidence that anyone other than the defendant perpetrated the shooting. The jury was left to decide whether or not it was going to accept that testimony. The state argued from the beginning that defendant was the gunman. Correct. And then the defense argued, oh, no, it was Moore. Correct. Okay, so extend my theory that there should not have been an accountability instruction because the case was not transferred as an accountability case. Then is he acquitted in adult court, or do we remand for the trial court to consider whether transfer was proper to adult court based on the theory of accountability in the beginning? Do you understand what I'm saying? What is the remedy? And you can ponder it and answer it in rebuttal. I do. And I'll do that. Okay. Thank you. Thank you, Mr. Carr. And is it my fault? Be I alone? Be I alone? By and large. By and large. Weird sign wasn't it? Okay. All right. And is that a given? Yes. Last comment. Thank you. May it please the court. Counsel. Lord Michael Bilan on behalf of the people. I will try to address all the issues that defense counsel has addressed. Would this court like to focus on one in particular first? How can you transfer a case to adult court, discretionary transfer, without revealing to the trial judge that this is being prosecuted on a theory of accountability? Well, I have. And why are you limited to that theory at trial? I have two points on that. First of all, that was never raised at trial. It was never raised on appeal. It's been waived. It's not before this court. Second point is that a charge includes a charge for accountability. So, actually, I have three points. It includes a charge for accountability. So when the judge is looking at the murder case, he's looking whether to transfer the murder case, that necessarily includes the lesser included and the theory of accountability. Even though the people's theory all along was principal liability, that never did change. But the charge he transferred was murder. That included all the charges that were included in it. So he transferred what there was to transfer, and the state's theory never changed. The evidence that was presented to him at the transfer hearing was the same evidence that was presented at trial, the defendant shot the victim twice in the back. So he's still looking at the same evidence in deciding whether to transfer the case, as is presented at trial. So the state didn't pull a bait and switch and do whatever was presented. What are the considerations of a transfer anyway? The transfer statute has a variety of factors to be looked at, including some factors that do have a bearing on the best interest of the minor. The people would point out that the main language of the statute is, as the trial judge said, a balancing test. What the one used to be was a balancing test where the court would consider what's in the best interest of the minor and what's in the best interest of the public, and transfer the case if it was not in the best interest of the minor and the public to proceed under the juvenile court laws. But the language, what's in the best interest of the minor, has been removed. So now a case is to be transferred if it's not in the best interest of the public to proceed under the juvenile court laws. The defendant argues that means that the trial judge ignored any factors that would bear on the best interest, but that is not true. It's just an accurate statement of how the law changed. All the trial judge did was recognize that change. He did not ever expressly disregard any factor that would have an interest, I mean, a bearing on the best interest of the minor. Instead, he explicitly considered all of the factors, including the factors that would have a bearing on the best interest of the minor, on the record. The defendant's report says that since the amendment in 1999, courts have repeatedly held that the best interests of the minor are a factor to consider. However, he cites two cases, and one of them is Morgan. That case cites a 1987 case for that proposition. 1987 is before the change in 1999. The Rodriguez case was a 2005 case, but it involved a 1987 crime. So for the 1987 crime, the old version of the statute would still be in play. The trial judge did consider, on the record, defendant's age, that he was born cocaine-addicted, his diagnosis, his special education, and he stated that he reviewed the defense reports multiple times. He just didn't weigh the evidence. His defense counsel wished he did, but it's not for this court to weigh the evidence. The Moore case is easily distinguishable. In that case, the trial judge, and the comments about the judge in this case saying she thinks it's going to be reversed on this were actually in the context of, she said if the transfer judge was not informed of the add-on, making it a minimum of 35 years, then it would be reversed. However, the record shows that the judge who transferred the case was informed of the add-on, that it would be a minimum of 35 years. So that logic wouldn't apply on appeal. And in Moore, there was no evidence presented as to multiple factors, so the trial judge couldn't properly consider the factors, but she didn't have any evidence to consider on them. But that's not true in this case. There was evidence on all of the factors. Moore was decided when? Moving on to the first two issues, and I believe I need to treat them together. Defendant was proven guilty beyond a reasonable doubt. Defendant argues he wasn't proven guilty beyond a reasonable doubt because the evidence was insufficient to prove accountability. But whether it was or wasn't, the jury returned a general verdict. The general verdict is a guilty verdict on any theory.  Although defendant tries to argue that the court should not follow Jackson and Reed because those cases rely on inconsistent verdict case law and jury lenity reasoning, that case law and reasoning does apply in this case. He says he's not arguing the verdicts are inconsistent, but he is. He argues he can't be found guilty as a principal because that would be inconsistent with the sentence enhancement, but inconsistent verdicts are allowed, and so even if the jury could only have found defendant guilty as a principal because evidence was insufficient on accountability, the verdict must still be affirmed. There's also the felony murder charge in there, too, that he was also found guilty on. The jury lenity rationale applies just as much as it does in the inconsistent verdict cases as well. Jurors would have an equal reason to know in both cases that their action would favor defendant and as stated in Reed, the jury need not be familiar with criminal law to determine a negative answer would favor a defendant. They might not know how, but they know that somehow it will, and defendant does not contest that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt on the principal theory. Was sufficient or insufficient? Was sufficient. He seems to agree that it was sufficient when viewed in the light evidence of the people to prove defendant guilty on a principal theory at least. Moving on to defendant's first issue, which is the accountability instructions issue. First, the courts in Zirkle, Rutherford, and Batchelor have stated that error in giving an accountability instruction is harmless where there is sufficient evidence to convict a defendant as a principal. There was sufficient evidence to convict a defendant as a principal in this case, so any error would be harmless. Also, it's not true that the case hinged almost entirely on the co-defendant's testimony. The people would also note Watson's testimony. Watson said that defendant said him and Moore were trying to get money from this white guy and that he shot him twice in the back as he was running away. So there's also Watson's testimony and also elements of Moore's testimony were corroborated by other witnesses, such as the two witnesses who entered the vestibule, proceeded up the stairs. They agreed that someone had heard run that, which is a slang term for a robbery. They testified how the three men remained in the vestibule even though the door was open. They could have followed them in. They could have entered before they even got there. They agreed that the victim opened the door and said Merry Christmas while someone was carrying in belongings because he was moving in. So there's also some corroboration as to what happened afterwards with Moore stated that defendant got a call. The phone records show that. He later stated that his girlfriend called Moore's phone. The phone records say that. The girlfriend also testified about that call. So there's corroboration of Moore's testimony as well as the testimony of Watson. Excuse me? Is there slight proof of accountability? So people don't always cite slight evidence to justify an accountability instruction. There doesn't have to be direct evidence. There doesn't have to be strong evidence. Just the slightest evidence will justify one. And there is slight evidence for a theory that defendant handed the revolver to Moore while in the vestibule and that Moore shot it before wiping it down and handing it back to defendant. This is supported by defendant's own statement that Moore wiped the gun down, which only makes sense if he handled it. Defendant was arguing that the evidence was inconclusive on principal liability. Defendant's argument was that Moore was the principal. The evidence was that defendant had the revolver before the shooting and after the shooting, whereas Moore had the shotgun before the shooting and after the shooting. This was also corroborated by Michaela Graves, who hadn't seen Moore with the revolver in weeks, but she had seen him with the shotgun. With defendant arguing that Moore must have handled the gun because he wiped it down, there's some slight evidence for a theory that jurors could get to thinking that, well, he wiped it down because a defendant had handed Moore the gun in the vestibule and he shot it. Are there any further questions on this issue? So the last issue that defendant discussed today is the cross-examination of Watson issue. The trial judge acted within her discretion in limiting the scope of cross-examination of Watson. Defendant wanted to elicit that Watson was scared of Moore because he heard that Moore had tried to rob someone with a gun. The offer of proof was only about a present fear that would affect his trial testimony. The offer of proof didn't concern any prior fear or prior motive to give a prior version of events. But there's no direct link between that rumor of an attempted armed robbery by Moore with a motive to testify falsely against defendant. Moore had already pled guilty. Moore had already testified in this case. So Moore's not trying to keep information from anyone when he already testified in this case. Watson was testifying against defendant, and even under defendant's argument as how the fear would affect testimony, that same fear applies against defendant because Watson had heard from defendant himself that defendant tried to rob someone while armed with a gun. Defendant also wanted to elicit testimony that Watson thought Moore's people had threatened him after he testified. Those alleged threats were made after Watson's testimony on direct examination and after most of the cross-examination had already been completed. Defense counsel acknowledged that his cross-examination was winding down. Watson's credibility couldn't be affected by events that hadn't happened yet. And moreover, Watson said he did not know who the threats came from. The threats were not specific, demanding, testify this way so Moore won't be implicated. They are just general threats and they can't be connected to Moore's. Even Watson said he didn't know who they came from. So there's just equal speculation that defendant's people could have been the ones to issue the threat as he's testifying against defendant in defendant's trial where Moore already testified there and Moore already pled. Even if there's error, there's no proven error because the evidence was not closely balanced. As the people discussed, there's a testimony of Moore, there's a testimony of Watson, the two match each other and there's corroboration of Moore's testimony on the collateral points as well as Watson's on the direct point. I have a question on the guns. Were they ever recovered? The shotgun was. Moore had the shotgun. He was apprehended a couple of days after the offense and when he was apprehended, he was jumping out of a window with a shotgun with him. So the shotgun was in fact recovered. The revolver was not. I don't believe it was. It's just a myth. He said even if there was error, there was no plain error. You can't have it that way. Even if there was error, there's no reversible error. Right. Because it was plain error, it was unpreserved error that we're talking about. Correct. The error wasn't preserved. So it's reversible. I can't say plain error doesn't mean anything other than it wasn't preserved. Do you have any questions on any issues the defendant did not discuss? You've done a nice job of handling all our questions today. I appreciate you weren't prepared to answer some of the questions and the concerns I have. Well, if there's no further questions on any of the issues the defendant did not discuss, I would just rely on the arguments made in my brief for those issues. Thank you, Your Honors. Thank you, Ms. Michael. Go ahead. Thank you. Just briefly, I would challenge the State to point to evidence in the record that someone other than the defendant committed the shooting, because there is none. The jury was free to reject the State evidence or accept it. In either scenario, the defendant was guilty either as a principal or he was not guilty at all. If you look at the State's cases, you see the kinds of situations where an accountability instruction is appropriate. In the Belcher case, for example, there was testimony that both the defendant and his co-defendant were armed at the scene of the shooting and that both of them had fired shots. Well, of course an accountability instruction is appropriate in that situation, because the jury doesn't know which defendant fired the fatal shot. In the Batchelor case, there was testimony that the victim and the two co-defendants were seen walking together shortly before the shooting, that the defendant had possession of the murder weapon, and that the defendant then hid the murder weapon after the shooting. The defendant himself testified that his co-defendant committed the shooting. So again, there is evidence that someone else other than the defendant acted as principal. Here there is no evidence of that ilk to support the giving of an accountability instruction. Don't we have evidence of two guns in the vestibule? I'm sorry, say that again? The other young man that survived this robbery said there were two guys in the car, two guys got out, and then the evidence is arguably two guns in the vestibule? Well, the state's theory and the testimony from Byron Moore was that he was in possession of a shotgun. We know that a shotgun was not used in the commission of this offense. Right, but recovered with Moore? Correct. The state's theory was that the defendant was armed with the murder weapon, which was, I believe, a revolver. So is your theory there was only one gun there, the revolver? Our theory is that Byron Moore committed the shooting and that he tried to deflect responsibility for it onto the 14-year-old minor, and that his testimony was a lie from beginning to start. Okay, forget the gun for a minute. Your client was in the car with the young man looking for drugs, got out of the car, and entered the vestibule with the man that you think shot the victim. Correct. Why doesn't that make him accountable? Because mere presence at the scene of the shooting, coupled with flight from the scene of the shooting, is not enough to prove accountability. You have to prove that the defendant either intended to aid or abet the commission of the offense or that he had attached himself to some criminal enterprise. Let's go to that point. Certainly. We have people who resided in that residence or multiple residences. What did they say? There was not much in the way of testimony. No, there wasn't much, but what did they say? So there were two witnesses who proceeded through the vestibule shortly before the shooting took place, and the short version of their testimony was that they proceeded in, they saw a white individual, two African-American individuals, they proceeded upstairs, and then they heard shots. Did they hear voices? They heard a voice, but they were not able to discern or identify whose voice it was. Okay, but what did they hear, the words spoken? They heard, run that, or something to that effect, which the testimony at trial was slang for an armed robbery. Correct. But they did hear that? They did. There were two people present. Correct. There. Correct. But again, simply because the defendant is there, he's 14 years old, he's hanging out with somebody who's older than him, simply because he's with Byron Moore, if we theorize that... Let's hypothetically change it. Let's say that they were able to identify the 14-year-old as making that statement. Would your position change? Absolutely. Okay. Absolutely. Because then he would be a part of the armed robbery. The enterprise. But again, this, you know, the state can't have it both ways. They can't reach a deal with Byron Moore in exchange for his truthful testimony, have him get on the stand, testify to a sequence of events that culminates in the defendant being the principal, being the shooter, him directing the victim to the location, him being the defendant saying, run that, pulling out a weapon, chasing down the victim, shooting him in the back, and then say, well, but just in case you don't believe Byron Moore, let's issue an accountability instruction. As your Honor has stated, their theory from the very beginning, from the time of the transfer hearing, was that the defendant acted as principal. That was the factual basis they presented. Regardless of what the charges were, the factual basis they presented to Judge Kick was, this defendant committed the shooting. And it was on that basis that Judge, because I have to believe a large component of his decision to transfer this case was that the defendant was acting as the gunman. But then we get to trial, and the state changes course at the last minute, not because they want to abort their theory, but because they want to give the jury another way to get there, if their evidence was not compelling enough. Thank you. Are you aware of any cases where the transfer is, let's say, for burglary? Maybe that's not a good example, but the minor is then convicted in adult court of a lesser-included? I don't know. I'm sure there probably are cases out there like that, but I'm not aware of any. All right. I appreciate, as I said to Mr. Michael, I appreciate you handling questions you had no idea were going to be directed at you. Certainly. Both done a nice job. And I did give some thought to Your Honor's question before about the remedy, and I believe that allowing the case to be transferred or remanded back to the juvenile court after the findings of the jury would give the state an impermissible second bite at the apple. And I was concerned about that as well because it was acquitted. I agree. Thank you. Thank you very much. Thank you. Thank you both for your argument today. We will take this matter under advisement and get back to you with a written decision within a short period of time. And we will now take a short recess.